UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11187-RWZ

BARCLAYS BANK PLC

v.

THOMAS A. POYNTER, et al.

MEMORANDUM OF DECISION

August 25, 2011

**ZOBEL, D.J.**

Plaintiff Barclays Bank PLC ("Barclays") brought this action against Dr. Thomas A. Poynter ("Poynter") and several reach-and-apply defendants to recover the deficiency on a mortgage Poynter granted Barclays to secure a custom-made luxury yacht in 2005. Poynter defaulted in 2008, and the ship was sold at auction in 2010, with a resultant deficiency. Barclays contends that the default was in breach of the loan agreement (Count I), as well as the mortgage agreement (Count II) and seeks equitable relief (Count III). Poynter has moved for summary judgment on the ground that Barclays may not recover the deficiency because it gave insufficient notice of the ship's sale.

**I.     Facts**

The material facts are not in dispute. In November 2005, Barclays loaned Poynter € 1,400,000 toward the purchase of a custom-made 2005 Oyster 62 Yacht called "Blue Beach," hull number 62-16, registration number 1176477 (the "Vessel").

Poynter granted Barclays a "First Preferred Ship Mortgage" ("mortgage") on the vessel which provided that for the first twenty-four months of the loan, he would pay interest only and thereafter installments of principal plus interest. In 2008, he requested that Barclays renegotiate the terms of the loan to allow him to continue to pay interest only. Barclays declined, but did permit Poynter to make interest-only payments from September through November 2008.

Poynter defaulted on the mortgage and Barclays repossessed the Vessel in October 2009. It then transferred the yacht to a liquidation company, National Liquidators, to be sold.

At issue is the sufficiency of the notice Barclays provided to Poynter. By letter dated February 5, 2010, Barclays informed Poynter that it had repossessed the Vessel and that it would be sold. The letter did not identify the time or place of the sale; it stated that the Vessel would "be sold by way of private sale sometime after the date of [the] letter." Letter from Barclays to Poynter dated Feb. 5, 2010 (Docket # 36, Ex. D., Aff. of Jennifer Markowski). It was sold at auction in Florida on March 31, 2010 for € 899,422.36, leaving a deficiency of € 683,297.64.

Now pending is defendant Poynter's motion for summary judgment.

## II. Legal Standard

Summary judgment will be entered where the moving party has shown, based on the pleadings, discovery, and any affidavits that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of summary judgment is "to pierce the pleadings and to assess the

2

proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991) (internal quotation omitted).

**III.   Analysis**

    **A.   Relevant Mortgage Provisions**

Under the mortgage, Barclays had the option to choose from several of remedies in the event of default. See Mortgage Section 4.00, Docket # 1, Verified Complaint, Ex. C. One such remedy is repossession and sale of the Vessel "after first giving [Poynter] notice thereof ten (10) days in advance of the time and place of sale." See id. Section 4.05. Although Poynter received notice that the Vessel was to be sold, he did not receive notice of the time and place as required. Therefore, he argues, he is relieved from his obligations under the mortgage and Barclays is barred from recovering the deficiency.

Barclays also had the option of proceeding under Section 4.06, which gave it "such other rights, privileges and remedies granted by applicable law."[1]

Barclays concedes that it did not comply with Section 4.05. This court must therefore determine whether it conformed to the requirements of Section 4.06. The issue is whether the ship's repossession and sale comport with "applicable law," a term which is not defined by the mortgage agreement. Barclays contends that "applicable law" refers to the law of the place of sale, here Florida. Poynter obviously disagrees.

---

[1]Section 4.06 provides that in the event of default, the mortgagee may "[e]xercise all rights, privileges and remedies in foreclosure or otherwise given Mortgagee by this Mortgage, or by any other instrument evidencing the indebtedness or the Obligations or securing performance thereof, as well as such other rights, privileges and remedies granted by applicable law." (Emphasis added).

3

### B. Application of Section 4.06

In analyzing whether Barclays conformed to the requirements of Section 4.06, an additional provision of the mortgage, Section 6.07, sheds some light on which law is "applicable law." It states that "construction" and "enforcement" of the mortgage are governed by "federal law, including, without limitation, [the Ship Mortgage Act]."

#### 1. Applicable Federal Law

The federal law governing ship mortgages is codified by the Ship Mortgage Act of 1920, 46 U.S.C. §§ 31301 et seq. The Act sets forth procedures for judicial foreclosure and sale of vessels; it is silent as to non-judicial foreclosure. Some courts have concluded that in the absence of a governing federal statute, the federal law applicable to non-judicial foreclosure is federal common law. See, e.g., Bank of America Nat'l Trust & Savs. Assoc. v. Fogle, 637 F. Supp. 305, 307 (N.D. Cal. 1985). Since the federal common law regarding ship mortgages is not fully developed, courts have, in turn, applied state law to fill the interstices. Id. at 308.

There is, however, a split of authority as to whether, in cases of non-judicial foreclosure, the Act precludes a mortgagor from using self-help remedies under state law. Courts differ, for example, as to whether the Act exclusively governs ship mortgages and therefore prohibits parties from including an enforceable self-help repossession and/or sale provisions within a preferred ship mortgage. Compare Nate Leasing Co. v. Wiggins, 114 Wash. 2d 508 (1990) (Ship Mortgage Act is exclusive and prohibits self-help remedy under state law) and Bank of America Nat'l Trust & Savs. Assoc. v. Fogle, 637 F. Supp. 305 (N.D. Cal. 1985) (same), with First Federal Savs.

4

F.S.B. v. M/Y Sweet Retreat, 844 F. Supp. 99, 102 (D.R.I. 1994) (Ship Mortgage Act not exclusive and provisions in mortgage allowing for self-help under state law are valid); Maryland Nat'l Bank v. Darovec, 820 F. Supp. 1083, 1087 (N.D. Ill. 1993) (same); Pee Dee State Bank v. F/V Wild Turkey, 1992 A.M.C. 1896, 1991 WL 355221 (D.S.C. 1991) (same); Dietrich v. Key Bank, N.A., 693 F. Supp. 1112 (S.D. Fla. 1988) (same); and Price v. Seattle-First Nat'l Bank, 582 F. Supp. 1568 (W.D. Wash. 1983) (same).

The First Circuit has yet to weigh in on the question. Accordingly, I first turn to the plain language of the statute. Section 31325(b)(1) provides that "[o]n default of any term of the preferred mortgage, the mortgagee may enforce the preferred mortgage lien in a civil action in rem." Similarly, subsection (b)(2)(A) states that the "mortgagee may enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in a civil action in personam." The use of the precatory auxiliary verb "may" rather than the mandatory "must" suggests that the lienholder is allowed to proceed under the Act, but is not required to do so. The plain language of the Act "stops short of preempting extra-judicial repossessions and private sales." Darovec, 820 F. Supp. at 1087. In addition, federal regulations promulgated by the United States Coast Guard prescribe procedures for passage of title by extra-judicial repossession and sale. See 46 C.F.R. § 67.07-11 (1991). Thus the Act does not preclude self-help under state law.

### 2. Applicable State Law

Here, the applicable state law, Florida law, merely requires that notification of

the pending sale be "reasonable."[2] Under the Florida Uniform Commercial Code ("UCC"), notification "10 days or more before the earliest time of disposition" is presumed to be reasonable. See Florida UCC § 9-679.612.[3] There is no requirement that there be notice of the time and place of sale. Under this expansive standard, Barclays' notification was sufficient and Barclays is entitled to judgment.

### C.  Application of Section 4.05

Even if Barclays had elected to proceed under Section 4.05, and even assuming Barclays failed to satisfy the notice requirement, it is not clear that such failure would be an absolute bar to recovery of the deficiency. Rather, there are three lines of authority with respect to the effect of failure to comport with the notice requirement. See Bank of Guam v. Del Priore, No. CV A99-043, 2001 WL 520956 (Guam Terr. May 17, 2001) (collecting cases). A majority of courts hold that a creditor's failure to give notice does not preclude recovery of the deficiency. Some courts hold that the amount recoverable in the deficiency judgment is off-set by any damages resulting from

---

[2]The mortgage agreement does not specify a governing state law. Section 6.07 contains an insert for the parties to designate a state or commonwealth whose law would govern, but the parties did not do so. Barclays contends that Florida law applies because such is the location of the sale of the vessel. Since Poynter does not appear to contest the application of Florida's state law, the court analyzes under Florida law.

[3]Under Article 9 of the UCC, as codified in the Florida statute governing default on security obligations, a secured party may take possession of collateral after default. See Fl. Stat. § 679.609. The secured party then "may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or after following any commercially reasonable preparation or processing." § 9-679.610(1). "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." § 9-679.610(2) (emphasis added). Section 9-679.611 requires that the secured party send "reasonable authenticated notification" in advance of the disposition of the collateral.

6

failure.  See Crowder v. Allied Inv. Co., 190 Neb. 487, 209 N.W.2d 141 (Neb.1973); and Swanson v. May, 40 Wash. App. 148, 697 P.2d 1013 (Wash. Ct. App.1985).  Other jurisdictions have adopted the rebuttable presumption theory, under which a court will apply a rebuttable presumption that the fair market value of the collateral at the time of repossession was equal to the outstanding debt.  See Butte County Bank v. Hobley, 109 Idaho 402, 707 P.2d 513 (Idaho Ct. App. 1985);  see also Roanoke Indus. Loan and Thrift Corp. v. Bishop (In Re Bishop), 482 F.2d 381, 385-386 (4th Cir.1973). Courts will award a deficiency judgment if the creditor rebuts the presumption by showing that it sold the collateral in a commercially reasonable manner.  See Connecticut Bank and Trust Co. v. Incendy, 207 Conn. 15, 540 A.2d 32, 37 (Conn. 1988).

Only a minority of courts hold that failure to comply with notice requirements acts as an absolute bar on recovery.  See Textron Fin. Corp. v. Trailiner Corp., 965 S.W.2d 426 (Mo.Ct.App.1998); Dependable Ins. Co. v. Landers, 421 So.2d 175 (Fla.Dist.Ct.App.1982); Wilmington Trust Co. v. Conner, 415 A.2d 773 (Del.1980); Maryland Nat'l Bank v. Wathen, 288 Md. 119, 414 A.2d 1261 (Md.1980).

Given that Massachusetts law is unsettled on this question, it is not clear that Barclays' noncompliant notice would be an absolute bar to recovering the deficiency.

In any event, it is unclear how Poynter was prejudiced by Barclays' insufficient notice.  There is no dispute that Poynter had more than 45 days' notice of the pending

7

sale, ample time to take steps to learn of the place and time of sale.[4] He has not alleged that he was prepared to make a payment to bring the default current, nor that he had arranged for private financing. There has been no suggestion that the auction was somehow deficient, or that the amount of the deficiency was not in fact owed. Nor is there an allegation that there is a significant disparity between the fair market value and the sale price of the Vessel.

Defendant's motion for summary judgment is denied. Barclays did not cross-move for summary judgment. Nevertheless, Fed. R. Civ. P. 56 expressly provides that a court may grant summary judgment to the non-moving party. Fed. R. Civ. P. 56(f)(1). Barclays is entitled to judgment on the issue of liability.

## IV. Conclusion

Defendant's motion for summary judgment (Docket # 33) is DENIED. Plaintiff is granted summary judgment on the issue of liability.

|  August 25, 2011  | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[4] Indeed, he was in regular communication with a representative of Barclays about a potential sale — which included information regarding number and price range of offers. See Docket # 37-2, Affidavit of Christopher Green (collecting emails). Shortly before the sale, he received additional correspondence from Barclays' counsel stating that there were interested parties and that a sale had not yet taken place. See Letter from Robert D. McIntosh to Poynter dated March 18, 2010, Docket # 37-1, Affidavit of Robert D. McIntosh.